CASE, JAMES R., Associate Senior Judge.
 

 Jarvis McBride seeks review of his judgment and sentence for manslaughter and providing a false name, but his issues on appeal relate solely to the manslaughter conviction. McBride argues that the trial court abused its discretion in giving a principals jury instruction and in denying his motion for judgment of acquittal. We reverse based on the second argument.
 

 On April 13, 2005, at approximately 9 p.m., Annie Hicks heard gunshots coming from the neighboring duplex. Hicks’ grandson, Cornelius Hicks, lived in the neighboring duplex next to a man named Gregory Hart. Hicks phoned her grandson, who rushed to his duplex in his car. When Cornelius Hicks arrived, approximately ten minutes later, he found Hart lying dead on the floor at Hart’s doorstep.
 

 Domingo Gaspar and Enrique Villago-mez, who were across the street at the time, also heard the shots. The pair reported seeing two men running from the scene of the crime just after the shots rang out. The witnesses described one man as wearing a red shirt and having dreadlocks and described the other man as wearing a white shirt and having short hair. They reported that the man in the white shirt fell to the ground and got back up as he ran away.
 

 The police who responded to the scene found a set of car keys where the witnesses reported the white-shirted man fell, and the police located a vehicle to which the keys belonged. As the police were examining the vehicle, a locksmith approached the vehicle in his van. Behind the locksmith’s van was a car occupied by two men fitting the witnesses’ descriptions and two other people. The police stopped the car and detained its occupants. Records showed that Natasha McBride, one of the occupants of the car that was stopped, was the owner of the vehicle to which the keys belonged.
 

 The police brought one of the eyewitnesses to the area where the suspects were stopped, and the witness said the man with the red shirt and dreadlocks looked like the same man he had seen running from the scene of the shooting. The man with the white shirt gave the name “Raymond Moore” but was later identified as Jarvis McBride, the son of Natasha McBride. Shoe impressions found near Natasha McBride’s vehicle were consistent with the shoes McBride was wearing. Natasha McBride testified that her son had asked her to accompany him to the vehicle, and the locksmith confirmed that he told someone on the telephone that he needed the owner’s consent to make new keys for the vehicle.
 

 
 *1148
 
 Detective Matthew Sellers questioned McBride, and McBride admitted that he had been at the scene of the shooting. Detective Sellers testified regarding McBride’s statements as follows:
 

 Q. Let me ask you, specifically, what did Jarvis McBride tell you about being at Gregory Hart’s residence; and, specifically, at the front door where the shooting occurred?
 

 A. Uh, later during the interview, uh, he admitted to being at Greg’s house. And when he was asked, “Did Greg have a gun at the door?” he said, “Yes.”
 

 Uh, when he was asked who shot first? His reply was, he did, referring to Greg.
 

 Q. All right. And what, if anything, did he tell you about whether he was sorry over the incident?
 

 A. We asked him if he was sorry what happened — for what happened, and he said, “Yes.”
 

 Q. All right. And did he say anything about wanting to take it back, if he could?
 

 A. Yes. Uh, yes, he did.
 

 The police did not recover the gun used to shoot Hart, and the test for gunshot residue on McBride’s hands was negative. The police did recover a firearm lying near Hart’s body, but it was not the weapon that had been used to shoot Hart. Hart’s goddaughter testified that Hart sold marijuana from his home and would always approach the door with a weapon.
 

 The State charged McBride with second-degree murder with a firearm and providing a false name. At trial, the State acknowledged that it could not prove that McBride fired the gun that shot Hart. Instead, the State proceeded on the theory that McBride was a principal in the killing. After the State presented its case, McBride moved for a judgment of acquittal, arguing that the evidence did not establish that he was a principal in the killing. The jury found McBride guilty as charged for providing a false name and found McBride guilty of the lesser-included offense of manslaughter. The court sentenced McBride to 364 days in prison for providing a false name and thirteen years in prison for manslaughter. The court awarded McBride 672 days of credit for time served.
 

 On appeal, McBride argues that the trial court erred in denying his motion for judgment of acquittal. We review the denial of a motion for judgment of acquittal de novo.
 
 State v. Shearod,
 
 992 So.2d 900, 903 (Fla. 2d DCA 2008). A judgment of acquittal should be granted “where ‘the evidence is insufficient to warrant a conviction.’ ”
 
 Id.
 
 (quoting Fla. R.Crim. P. 3.380). The trial court should not grant a motion for judgment of acquittal “[ujnless ‘there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law.’ ”
 
 Id.
 
 (quoting
 
 Williams v. State,
 
 967 So.2d 735, 755 (Fla.2007)).
 

 In order to convict a defendant as a principal, the State must prove that (1) the defendant intended for the offense to be committed and that (2) the defendant assisted in the commission of the offense.
 
 Acord v. State,
 
 841 So.2d 587, 589 (Fla. 2d DCA 2003). “Mere presence at the scene, knowledge of the crime, and flight are insufficient to justify a conviction.”
 
 A.B.G. v. State,
 
 586 So.2d 445, 447 (Fla. 1st DCA 1991).
 

 The State’s evidence established that McBride witnessed the shooting and ran from the scene of the crime. However, the State failed to present any evidence regarding the circumstances of the shooting or the reason for McBride’s visit to Hart’s apartment. There was no evidence that McBride fired a gun, and gunshot
 
 *1149
 
 residue was not found on his hands. Even assuming that the person -with the red shirt and dreadlocks was the shooter, there was no evidence that McBride intended for the crime to be committed or committed an act in furtherance thereof. While McBride said he was sorry for what had happened and wished he could take it back, he never admitted that he was actually involved in the shooting.
 

 The facts of this case are analogous to those in
 
 J.L.W. v. State,
 
 642 So.2d 1198 (Fla. 2d DCA 1994). In
 
 J.L.W.,
 
 a police officer received a radio transmission concerning a robbery and drove the victim to a stopped Ford Taurus. J.L.W. was inside the Taurus, and a search of the vehicle revealed a handgun. J.L.W. admitted that he had possessed the gun at some point prior to the robbery but denied any involvement in the robbery. J.L.W. claimed he had stayed inside the car during the robbery.
 

 This court reversed J.L.W.’s conviction for attempted armed robbery based on its determination that the evidence was insufficient to show that he was a principal. The court concluded that the State had established nothing more than J.L.W.’s “mere presence in the car when the offense was committed,” which was “not the same as participation with criminal intent.”
 
 Id.
 
 at 1199. The court also noted that there was no evidence J.L.W. possessed the gun on the day of the robbery or gave the gun to a participant.
 

 As in
 
 J.L.W.,
 
 the State’s evidence in this case established nothing more than McBride’s mere presence when the offense was committed. The State failed to present any evidence that established McBride’s intent that the victim be shot or that he committed an act in furtherance of the shooting. In fact, the State failed to establish any facts at all to establish “participation with criminal intent.”
 

 While it is true that the defendant in
 
 J.L.W.
 
 did not flee the scene of the crime, McBride’s act of doing so does not in itself give rise to a presumption of his intent or participation in the crime.
 
 See J.H. v. State,
 
 370 So.2d 1219 (Fla. 3d DCA 1979). In J.H., the defendant and another male named Mack approached a female who was sitting on a bus bench. Id. at 1219. Mack sat on the bench next to the female, and the defendant stood behind the bench. Mack struggled with the victim and grabbed her purse. Then Mack and the defendant fled the scene together. The Third District held that the evidence did not support the defendant’s adjudication as a principal in the robbery. Id. at 1220. The court explained that there was no direct evidence of the defendant’s intent to participate in the crime and that the circumstantial evidence merely established that the defendant was present at the scene and fled after the crime had been committed.
 

 Because the State has not presented evidence that McBride intended for the shooting to be committed and assisted in the commission of the shooting, the trial court erred in denying McBride’s motion for judgment of acquittal. We therefore reverse the manslaughter conviction on this basis. Our resolution of this issue renders McBride’s challenge to the jury instructions moot. McBride’s conviction for providing a false name is affirmed.
 

 Affirmed in part, reversed in part, and remanded.
 

 FULMER and VILLANTI, JJ., Concur.